IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH ROZZELLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 98-1738 |
| | ) | |
| CHARLES ROSSI, Health Care | ) | Judge Gary L. Lancaster/ |
| Administer; Dr. FALOR; EMSA | ) | Magistrate Judge Amy Reynolds Hay |
| and/or PRISON HEALTH SERVICES; | ) | |
| and RAYMOND RAMSEY | ) | |
| | ) | |
| Defendants | ) | Re.  Dkt. No. [162] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the Moving Defendants' joint motion for summary judgment, Dkt. [162], be granted.

REPORT

Regrettably, this case is more than nine years old and has had a long and convoluted history.  Given its age, the case obviously has been the subject of prior proceedings, familiarity with which is presumed.

Keith Rozzelle ("Plaintiff"), was, at the time of filing this civil rights suit, a state prisoner.  In his pro se civil rights complaint, he alleged an Eighth Amendment violation, involving his treatment for severe acne.   Whereas previously in other Pennsylvania Department of Corrections ("DOC") prisons, Plaintiff had been treated with a drug called Accutane which successfully treated his acne, upon his transfer to SCI-Greene, after his Accutane prescription ran out and liver tests indicated elevated liver enzymes, a possible side effect of Accutane, the prescription was discontinued in favor of apparently less expensive drugs, which Plaintiff

complained were less effective in treating his skin condition, even though Dr. Falor concluded that Plaintiff's acne was being controlled with Retin-A, a topical cream.

Essentially, this case boils down to a claim that requiring Plaintiff to try formulary drugs and have them prove ineffective before Emergency Medical Services Associates ("EMSA") would approve the more expensive non-formulary Accutane for treatment of Plaintiff's acne violates the Eighth Amendment.

Although Plaintiff was originally proceeding pro se, as of May 24, 2005, Plaintiff has been represented by Attorney Amy Cunningham, who apparently has been privately retained. The operative complaint in this case is Dkt. [67].  See also Dkt. [70](order directing that amended complaint be filed).  The complaint alleges violations of Plaintiff's Eighth Amendment rights to be free of cruel and unusual punishment in that he was denied Accutane, which effectively treated his skin condition and which was replaced by treatments claimed to be ineffective by Plaintiff, who asserts the discontinuation of Accutane occurred primarily based upon cost considerations.

The defendants who remain after the prior proceedings terminated some other defendants, are: Dr. Stanley Falor, the physician who treated Plaintiff; Charles Rossi, the Health Care Administrator at SCI-Greene during the relevant time frame; EMSA, apparently, the independent contractor that provides health care to inmates at SCI-Greene; and Raymond Ramsey, who is a Doctor of Pharmacy, Dkt. [110], and who, on behalf of EMSA, signed at least one of the forms denying Dr. Falor's request to treat Plaintiff with the non-formulary[1] drug Accutane.  Presently

---

[1]  "A formulary drug is one on a list of predetermined economical medications that a doctor may prescribe for a condition.  A non-formulary drug is one that does not come within the approved list of medications."  Dkt. [86] at 3, n. 3.  Accutane was apparently not on EMSA's formulary.  Accordingly, before Plaintiff could be treated with Accutane, formulary medications had to be tried first and found ineffective before EMSA would approve a request for a non-formulary drug.  See Dkt. [190-3] at 40

before the Court for disposition is the joint motion for summary judgment filed by these

remaining defendants.  Dkt. [162].[2]

### Standard of Review for Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, "the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R.Civ. P. 56(c).  Summary

judgment may be granted against a party who fails to adduce facts sufficient to establish the

existence of any element essential to that party's case, and for which that party will bear the

burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears

the initial burden of identifying evidence which demonstrates the absence of a genuine issue of

material fact.  Once that burden has been met, the non-moving party must set forth "specific facts

showing that there is a *genuine issue for trial ...* or the factual record will be taken as presented

by the moving party and judgment will be entered as a matter of law.  Matsushita Electric

_____

("Accutane is a non-formulary medication.  As per the medication policy, all alternative medications on the formulary must be tried and deemed ineffective.").  After treating Plaintiff with a couple of formulary drugs, which proved to be ineffective, and after referring Plaintiff to a dermatologist, who recommended the use of Accutane, Dr. Falor submitted at least two requests to EMSA  for the use of the non-formulary drug Accutane: the first time was on July 26, 1998, Dr. Falor ordered a non-formulary request be faxed to EMSA.  See Dkt. [10], Plaintiff's Medical records at 22 (attached to Linda Varner's affidavit).  The first request was denied by EMSA.  See id. at 38 (notation dated July 27, 1998 indicating that "non-formulary request for Accutane not approved.  More information needed.").   The second request made by Dr. Falor occurred on  August 31, 1998.  Id. at 20.  See also id. at 69 & 70.  The request was again denied by EMSA.  See id. at 69 & 70.  In one of its denials, EMSA recommended trying Retin-A cream, which was, in fact, afterwards prescribed for Plaintiff, and which, in Dr. Falor's opinion, controlled Plaintiff's Acne within roughly one month of Plaintiff being treated with the Retin-A.  See Dkt. [10], Plaintiff's medical records at 34.

[2]  Also pending before this Court are two motions to strike , Dkt. Nos. [170] & [185], filed by Plaintiff during the briefing of summary judgment, which are the subject of a separate Memorandum Order being issued simultaneously herewith.

Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine only if the

evidence is such that a reasonable jury could return a verdict for the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Thus, it must be determined "'whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097,

1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby,

Inc., 477 U.S. at 251-52.

**Discussion**

In their motion for summary judgment, the Moving Defendants point out that the Plaintiff

has failed to exhaust his administrative remedies as required by 42 U.S.C. 1997e(a), which

provides that "[n]o action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."  There is

no dispute that this is an action brought with respect to prison conditions under Section 1983 by a

prisoner confined in a prison.  Based upon the arguments of the parties, the sole dispute is

whether there is a material factual dispute concerning Plaintiff's exhaustion of the available

administrative remedies.

While it is true that exhaustion of administrative remedies constitutes an affirmative

defense, Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002), Defendants have raised the affirmative

defense in their motion for summary judgment and have supported this defense with appropriate

evidentiary material in the form of the corrected affidavit of Cindy Watson.  Dkt. [190-2].  In that

affidavit, Ms. Watson avers that she is a Grievance Review Officer, and as part of her duties she

has charge of the records of grievance appeals.  She averred that the available administrative

4

remedy which Plaintiff was required to exhaust was that found in DC-ADM 804.  She averred

that the grievance procedure as outlined in DC-ADM 804 requires a three step process with the

final appeal to the Secretary's Office of Inmate Grievance and Appeals, formerly known as the

Chief Hearing Examiner.  She averred that such office keeps a record of all such appeals, at least

since 1995 and that she reviewed those records, kept in the ordinary course of business and that

those records show that Plaintiff failed to follow the third step in the grievance process.

In addition, the Moving Defendants have supplied the court with an authenticated copy of

the DC-ADM 804 policy in effect at the time that Plaintiff would have been required to exhaust.

Dkt. [193-2].  That policy requires that the grievant file an appeal to the Chief Hearing Examiner

from the Superintendent's disposition of the first level appeal. Dkt. [193-2] at 6.[3]  As noted, the

Moving Defendants presented evidence in the form of Ms. Watson's affidavit that Plaintiff did

not file the final appeal to the Chief Hearing Examiner in Grievance Nos. GRN 751-98 and GRN

360-98.  These materials are sufficient for the Moving Defendants to carry their initial burden to

show no genuine issue of material fact with respect to whether Plaintiff exhausted his

administrative remedies.  Hence, the burden then shifts to Plaintiff to come forward with

competent evidence of his exhausting his administrative remedies.  See  Walters ex rel. Walters

v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D.Pa. 2002).

In an effort to carry his burden of production to show a genuine issue of material fact,

Plaintiff filed an affidavit wherein he includes documentary evidence of the fact that he filed a

first level appeal to the facility manager/superintendent in Grievance No. GRN 360-98, Dkt.

_____

[3]  This is the applicable version of the DC-ADM 804 because it was effective November 1, 1997, (Dkt.
[193-2] at 6) and the only final appeals that Plaintiff claims he filed were concerning Grievance Nos.
GRN 360-98 and GRN 751-98.  Dkt. [168] at 5, ¶ 18.  Plaintiff filed the initial grievance assigned
Number GRN-360-1998 on June 6, 1998, (Dkt. [190-3] at 77) and the initial grievance assigned Number
GRN 751-98 on August 16, 1998. Dkt. [190-3] at 41.

[168-5] at 1, and the superintendent's response.  Dkt. [168-8] at 1.  He also includes documentary

evidence that he filed the initial grievance numbered GRN 751-98, Dkt. [168-7] and an appeal to

the superintendent, Dkt. [168-9] at 1 and Dkt. [168-10] at 1, and the superintendent's response to

the appeal.  Dkt. [168-16].  Noticeable by their absence are copies of the final appeals to the

Chief Hearing Examiner, even though  Plaintiff avers that "I filed for Final Appeal on Grievances

03690-98 and 0751-98."  Dkt. 168 at 5, ¶18.

       The Court finds Plaintiff's affidavit deficient because Fed. R. Civ.P. 56(e) requires that

"[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be

attached thereto or served therewith."  No such copies of Plaintiff's final appeals accompanied

Plaintiff's affidavit and so, we find that the affidavit is deficient under the rule and cannot create

a genuine issue of material fact with respect to whether Plaintiff exhausted his administrative

remedies.  See, e.g., Winder v. Sandham, No. CIVS041944DFLKJMP, 2006 WL 1652411, *4

(E.D.Cal. June 13, 2006)("'if documentary evidence is cited as a source of a factual contention,

Rule 56(e) requires attachment,' even if the affidavit is also based on personal knowledge.

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

A court may refuse to consider an unsupported affidavit. *Cermetek, Inc. v. Butler Avpak, Inc.*,

573 F.2d 1370, 1377 (9th Cir. 1978)").[4]

---

[4]   The court is well aware of the dicta in Third Circuit Court cases to the effect that "an inmate who is
proceeding pro se, is in a decidedly difficult position from which to generate 'record evidence' on his
behalf ... [u]nder these circumstances, his affidavits ... are about the best that can be expected from him
[at summary judgment phase of] the proceedings."  Smith v. Mensinger, 293 F.3d 641, 649 n.4 (3d Cir.
2002)(citations and internal quotation marks omitted).  Those comments were generated in the context of
Eighth Amendment excessive force cases and addressed the issue of whether a prisoner plaintiff must
produce objective or documentary evidence of the extent of his injuries in order to survive summary
judgment.  The cases hence are distinguishable on their facts.  See e.g., id.; Brooks v. Kyler, 204 F.3d
102 (3d Cir. 2000).  *See also* Norman v. Taylor, 25 F.3d 1259, 1265 (4th Cir. 1994)(Hall, J., dissenting)
(which was the originator of the quote and which also was a case involving excessive force and the
objective component of adequate injury).  Even if the principle could be applied outside such excessive

Plaintiff does append to his Supplemental Response, Dkt. [173], a copy of a letter which purports to be the final appeal of Grievance No. GRN 360-98, dated August 14, 1998.

DC-ADM 804, in effect at the time, required Plaintiff to address his final appeal to the "Chief Hearing Examiner" and to send it to that official at 1451 S. Market Street, Elizabethtown, Pa. 17022.  Dkt. [193-2] at 5-6.  Plaintiff's letter is addressed to the "Chief of Health Care Service" and does not contain an address in the heading.  It is not clear that this satisfied the Department of Corrections authorities.  Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004)(the yardstick to measure exhaustion is the state's grievance procedure not some amorphous federal law).  However, Plaintiff does represent in an unnumbered grievance, dated November 12, 1998, that he "filed an appeal to central office, but was referred back to superintendent."  Dkt. [168-13].  It is not clear whether this final appeal that was sent back was Plaintiff's letter to the Chief of Health Care Service dated August 14, 1998.

In any event, even if Plaintiff's flawed letter of August 14, 1998 can be considered a proper final appeal of Grievance 360-98, we find that Grievance 360-98 does not relate to the claims raised in this lawsuit but complains of Dr. Howard's attitude and refusal to treat Plaintiff for his razor bumps not for acne.  The full text of the grievance No. GRN-360-98 is as follows:

> I signed up for sick call on 6-8-98 and when I was seen today by Dr. Howard[,] she refused to give me medical treatment for my razor bumps.
> This co-called Doctor has a problem with her attitude, every time she comes to see someone she always getting arrogant with them and she's always denying people medical treatment.  I have an [sic] history of skin problem/razor bumps . . .

---

force cases and evidence of physical injury, it is still inapplicable here because as is clear from the quotes, the principle applies to a pro se prisoner responding to a summary judgment motion.  Here, at the time Plaintiff filed his affidavit he was represented by counsel and had been for nearly two years prior to the filing of the affidavit and throughout much of the extended time for discovery.  Accordingly, the principle in Mensinger, Brooks and Norman is inapplicable to this represented Plaintiff.

          I respectfully request to be seen by someone concerning this Doctor[']s
attitude and her denial of medical treatment. . .

Dkt. [190-3].  No apparent issue is raised concerning treatment with Accutane for his acne

problems.  The grievance was dated June 9, 1998.  In fact, Plaintiff could not have complained

about not receiving Accutane as of that date because as of June 9, 1998, he had not yet been seen

by Dr. Small, the outside dermatologist-consultant who was the one that recommended trying

Accutane.  This consultation with Dr. Small did not occur until July 21, 1998, more than a month

after Plaintiff filed Grievance GRN 360-98.  Dkt. [10], Plaintiff's Medical Records at 13.  And

even after the consultation, it was not known that Plaintiff was a good candidate for Accutane at

that time because as a precondition to placing Plaintiff on the Accutane, several blood tests

needed to occur, according to Dr. Small, including LFTs, i.e., liver function tests.  Id.  The tests

were not ordered until July 22, 1998.  Id. at 22 (entry dated 7/22/98).  The test results were not

known by Dr. Falor until July 26, 1998.  Id. at 38.  Plaintiff did not learn that the test results

showed he was a candidate for Accutane until August 3, 1998.  Dkt. [12] at ¶ 11 ("Upon inquiry

during a medical interview on August 3, 1998, I was advised by Dr. Falor that the laboratory

results had returned confirming that I was a candidate for Accutane.").  Hence, Plaintiff could not

have included in the Grievance GRN 360-98 any complaints about Accutane and its non-

reception or about the failure of any one to comply with Dr. Small's recommendation, which are

the complaints that form the very foundation of this lawsuit, because Plaintiff had no basis upon

which to do so as of June 9, 1998, the date he filed Grievance GRN 360-98.  In this connection,

the Court notes the DC-ADM 804 policy in effect at the time provides that "Only issues raised at

Initial Review shall be appealed."  Dkt. [193-2].  Hence, Grievance GRN 360-98 cannot be said

to have raised the issue or claim that Plaintiff is suing for in the present lawsuit and so does not satisfy the exhaustion requirement.[5]

In any event, regardless of whether Plaintiff exhausted his administrative remedies or not, the Moving Defendants are still entitled to summary judgment as explained below.

In the alternative, the Court recommends the grant of summary judgment sua sponte to all of the Moving Defendants, based on the record before the Court because there is no genuine issue of material fact that the refusal to treat Plaintiff with Accutane before first attempting to treat Plaintiff with different formulary and possibly, other non-formulary drugs which were less expensive than Accutane, simply has not "deprived [Plaintiff] of the minimal civilized measure of life's necessities" as is required to make out the objective prong of an Eighth Amendment claim.  Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)(internal quotes omitted), *superseded by statute on other grounds as stated in,* Ghana v. Holland, 226 F.3d 175, 184  (3d Cir. 2000).[6]

---

[5]   In contrast, Grievance No. GRN 751-98, Dkt. [190-3] at 41,  clearly raised the same claim that Plaintiff raises in this lawsuit, and although Plaintiff claims in his affidavit that he filed a final appeal of this grievance, there is no documentary evidence that he did so and the reasoning above with respect to the requirements of Fed.R.Civ.P. 56(e) to attach documents that are referred to in the affidavit, renders the affidavit deficient with respect to Grievance No. GRN 751-98.

[6]   While it is true that the Moving Defendants did not seek summary judgment based upon the fact that requiring use of non-formulary drugs first does not violate the Eighth Amendment, a District Court has the inherent authority to grant summary judgment sua sponte so long as the party opposing summary judgment has notice and an opportunity to be heard concerning the proposed basis for the sua sponte grant of summary judgment.  Canell v. Bradshaw, 97 F.3d 1458, at **5 (Table, Text available in Westlaw), (9th Cir. 1996) (unpublished)("A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues.").  See also Celotex, 477 U.S. at 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").  This report and recommendation can serve as the necessary notice and the opportunity to object provides Plaintiff with the opportunity to present any further evidence he may have with respect to this issue.  Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) ("Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims.  Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report.   Thus,

This is so because "[w]hat we know as men and women . . .  we must not forget as judges[,]" Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998), and we know that such a course of treatment, i.e., requiring exhaustion of formulary prescriptions prior to approving non-formulary prescriptions, is normal for non-incarcerated individuals, who find themselves in an HMO or other similar health insurance coverage with formularies and if such treatment is generally accepted for non-incarcerated individuals then, *a fortiori*, it cannot be said to be violative of the Eighth Amendment.  The fact that cost enters into such calculations for treatment of prisoners, and requires that they try less expensive formulary drugs and give those formulary drugs a chance to work before they can get more expensive non-formulary drugs does not thereby render such decisions to try less expensive drugs first an Eighth Amendment violation.  The consideration of cost neither singly nor in consideration with the other evidence contained in the summary judgment record establishes that the Moving Defendants were deliberately indifferent.  For the rule is: cost is a legitimate consideration in determining which tests to perform and which treatments to follow.  See Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999)("it is difficult to generalize, except to observe that the civilized minimum is a function both of objective need [for the particular test or treatment] and of cost.  The lower the cost, the less need has to be shown, but the need must still be shown to be substantial.");  Onishea v. Hopper, 171 F.3d 1289, 1300 (11th Cir. 1999)("Penological concerns such as security and cost are legitimate").  Consideration of the cost in trying alternative treatments and finding them ineffective before trying the more expensive treatments simply does not per se deprive a prisoner of the minimal civilized measure of life's necessities.  That cost is a factor in the provision of

---

Magouirk was afforded both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court."); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, *1 (6th Cir. 1998)(same).

treatment outside the prison walls supports this conclusion.  See, e.g., Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997)("Although it is possible that the fee-based program at issue here may cause some prisoners to refrain from seeking medical treatment as early as they might otherwise do so, the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.").  Resources are not infinite and reasonable allocation of those resources does not amount to deliberate indifference even if a prisoner does not receive the most costly tests or his treatment of choice or even a treatment recommended by some doctors but disagreed with by other doctors.  This is true because cost is a legitimate consideration in the treatment of non-incarcerated individuals as is evidenced every day in all sorts of health care decisions, including the requirement that a non-incarcerated patient be tried on a formulary drug and have it proved ineffective before a non formulary drug will be approved. See, e.g., In the case of Pacificare/Secure Horizons (wherein a non-incarcerated woman was denied approval of a drug by her Medicare managed care organization because "the plan policy required the trial and failure of drugs on the plan formulary before authorization of a non-plan drug would be given" and the appeals panel upheld the decision to do so, overturning the Administrative Law Judge's determination to the contrary).[7]  If such requirements of trying formulary medications and finding them ineffective before trying non-formulary medications apply to the non-incarcerated, it is indeed difficult to imagine that such requirements applied to prisoners can be said to constitute deliberate indifference or cruel and unusual punishment.  See

---

[7]  This administrative law decision by the Medicare Appeals Council is available at:

      http://www.hhs.gov/dab/macdecision/pacificare.html

Furman v. Georgia, 408 U.S. 238, 277 (Brennan, J., concurring) ("punishment must not be
unacceptable to contemporary society").

Alternatively, the court recommends the sua sponte grant of summary judgment to Dr.
Falor because no reasonable jury could find that Dr. Falor acted with the necessary subjective
mindset to establish deliberate indifference to Plaintiff's medical needs.

The Supreme Court has explained that analysis of a violation of the Eighth Amendment
involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm
suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of
the person inflicting the harm.  See Wilson v. Seiter, 501 U.S. 294 (1991).

As to the subjective component, in cases, such as this one, involving the alleged denial of
medical care, the Supreme Court has held that "deliberate indifference to serious medical needs
of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth
Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976)(internal quotations omitted).  The
Court has held that "deliberate indifference" occurs when a prison "official knows of and
disregards an excessive risk to inmate health or safety; the official must both be aware of facts
from which the inference could be drawn that a substantial risk of serious harm exists and he
must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  As a corollary of
the deliberate indifference standard, mere negligence by staff at the prison, medical personnel
and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation.
Estelle, 429 U.S. at 105-06.  The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care
> cannot be said to constitute "an unnecessary and wanton infliction of pain" or to
> be "repugnant to the conscience of mankind." Thus, a complaint that a physician
> has been negligent in diagnosing or treating a medical condition does not state a
> valid claim of medical mistreatment under the Eighth Amendment. Medical
> malpractice does not become a constitutional violation merely because the victim

is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

The plaintiff bears the burden of proving both the objective and subjective components of an Eighth Amendment claim.  See, e.g., Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001); Brewer v. Blackwell, 836 F.Supp. 631, 639 (S.D. Iowa 1993), appeal dismissed, 43 F.3d 1476 (Table)(8th  Cir. 1994).

The record evidence establishes that Plaintiff had been treated successfully with Accutane at SCI-Frackville, in 1990 and 1991.  Dkt. [24] at 4.  In 1994 at SCI-Camp Hill, Plaintiff also was successfully treated with Accutane.  Id.  Thereafter, Plaintiff continued to receive Accutane following his transfers to SCI-Huntington and SCI-Cresson.  Id. at 4-5.  When Plaintiff was transferred to SCI-Greene in September 1996, his ninety-day prescription of Accutane was sent from SCI-Cresson to SCI-Greene.  Id. at 5.  On June 10, 1997, while Plaintiff was still at SCI-Greene, Accutane was again ordered for Plaintiff by Dr. Harper, one of the physicians at SCI-Greene, with a notation of "*non formulary (consent signed)".  Dkt. [10], Plaintiff's medical records at p. 27.  Just 13 days later, on June 23, 1997, an order was entered by Dr. Morris Harper in Plaintiff's medical records to "D/C [discontinue] Accutane . . . schedule on PA [Physician Assistant] Line to inform pt. medication was discontinued due to ↑LFT's[,]" which the court takes to mean increased liver function test results.  Dkt. [10], Plaintiff's medical records at p. 27. See also id. at 39 (notation by Dr. Falor dated July 22, 1998, that Accutane was discontinued on 6/13/97 because of "elevated liver enzymes" and that "Dr. Small [i.e, the dermatologist that Dr. Falor referred Plaintiff to, who examined Plaintiff on July 21, 1998] believes he could take

Accutane again if the [liver function] tests are back to normal.").[8] The court takes judicial notice of the fact that the FDA website notes the following with respect to Accutane:[9]

> Clinical hepatitis considered to be possibly or probably related to Accutane therapy has been reported. Additionally, mild to moderate elevations of liver enzymes have been observed in approximately 15% of individuals treated during clinical trials, some of which normalized with dosage reduction or continued administration of the drug. If normalization does not readily occur or if hepatitis is suspected during treatment with Accutane, the drug should be discontinued and the etiology further investigated.

Some time after the Accutane was discontinued, Plaintiff's acne flared up again and he was prescribed Tetracycline for treatment of his acne. Dkt. [12] at ¶ 7; Dkt. [10], Plaintiff's Medical records at p. 26 (first entry dated 3/13/98, ordering Tetracycline). As late as April 24, 1998, Dr. Falor assessed Plaintiff's acne to be "mild at present" even though Plaintiff had "acne so severe, he has scars." Dkt. 10, Plaintiff's medical records at 43. Apparently, less than two months after tetracycline was prescribed, and after it may have appeared that the tetracycline[10] was not adequately treating Plaintiff's acne, Dr. Falor, on May 3, 1998, requested a dermatology consult. Dkt. [10], Plaintiff's medical records at 12. That consult was approved and the appointment was scheduled for July 21, 1998. Id. The consult took place and Dr. Small, the

---

[8]  The Court notes that Plaintiff previously contended that he was told that his Accutane was discontinued due solely to considerations of cost. Dkt. [12] at ¶ 6. Even if the Court could consider such hearsay, the record clearly establishes that the Accutane was discontinued due, at least in part, to elevated liver function test results, a known complication of Accutane. That cost may also have entered into the equation to discontinue the Accutane does not establish thereby an Eighth Amendment, given that cost is one legitimate consideration.

[9]  Available at:

        http://www.fda.gov/medwatch/SAFETY/2002/accutane_PI_6-02.pdf

[10]  The record is silent with respect to how long a patient must be given tetracycline before it can be determined whether the medication is effective in treating the condition. However, the record does reveal that Plaintiff refused to take his tetracycline as prescribed. Dkt. [10], Plaintiff's medical records at 8. However, the record does not reveal exactly when he engaged in this refusal, although Plaintiff did assert that the tetracycline made him sick to his stomach. Dkt. [12], ¶ 7.

dermatologist/ consultant recommended "Consider accutane for pt" and, in addition, Dr. Small

noted that "he [i.e., Plaintiff] will need CBC [complete blood count lab test] LFTs [Liver

Function tests] . . . .  prior [?, not entirely clear] to Rx [i.e., prior to prescribing the Accutane]"

Id. at 13.  On July 22, 1998, the very next day, Dr. Falor ordered lab tests including CBC and

LFTs.  Id. at 22.  On July 26, 1998, after learning the results of the blood tests were normal, id. at

38, indicating no elevated liver function and, therefore, Plaintiff was a candidate for Accutane,

Dr. Falor ordered a non-formulary request be faxed to EMSA.  Id. at 13.  The request was denied

by EMSA.  See id. at 38 (notation dated July 27, 1998 indicating that "non-formulary request for

Accutane not approved.  More information needed.").  See also Dkt. [10], Plaintiff's Medical

Records at 21 (notation to place Plaintiff on the "MD line", i.e., the Doctor's line, to "discuss

Accutane denial").  On August 28, 1998, Dr. Falor wrote a note in "Physician's orders" that

directed "Consider taking Polaroid photos of skin problems."  Id. at 20.  On August 31, 1998, Dr.

Falor wrote a progress note in Plaintiff's medical chart noting that photographs were taken of

Plaintiff's back but they were not very clear, and that the acne has "increased since July 26,

1998."  Id. at 36.  Consequently, on  August 31, 1998, Dr. Falor again sent/faxed a non-

formulary request form for Accutane to EMSA.  Id. at 20.  See also id. at 69 & 70.  The request

was again denied by EMSA.  See id. at 69 & 70.  One of the responses from EMSA said "Please

try Retin-A cream.  May have to use Minocyline if no improvement."  Id. at 69. On September 1,

1998, Dr. Falor ordered Retin-A cream.  Id. at 20.  Specifically, he ordered "Retin A Cream

0.05% . . . Apply QD [i.e., "quaque diem" or "once a day"] at HS [i.e., "hour of sleep"] 20 Gm

[i.e. 20 gram tube] < 30 d [i.e., less than 30 days]".  On November 9, 1998, apparently after

Plaintiff had been using the Retin-A cream, Dr. Falor entered a progress note in which he

assessed Plaintiff's "acne controlled."  Dkt. [10], Plaintiff's medical records at 34.  Thereafter, it

appears Plaintiff was placed on a maintenance regimen of Oxy-medicated soap and Benadryl

because some three months later, Dr. Falor entered a progress note indicating that Plaintiff "has

been on Benadryl and Oxy medicated soap in place of Accutane." Id. at 32.   On March 8, 1999,

Dr. Falor entered another note in the progress notes wherein he observed: "S[ubjective

complaints:] would like to have Accutane.  Had trouble getting oxy medicated soap for a while.

O[bjective symptoms:] skin is scarred from acne.  There are blackheads on the back.  Only two

sl[ightly] raised black heads on the back.  A[ssessment:] Health Seeking behavior out of line with

physical exam - Acne/Dandruff.  P[lan] See orders of 3-8-99." Id. at 31.  The order entered on

March 8, 1999 referred to by Dr. Falor indicated that "Please deliver treatment ordered. . . . 2-6-

99 Oxy medicated soap 1 bar q [i.e, every] 2 weeks to 5-15-99." Id. at 16.  Plaintiff was

transferred to SCI-Pittsburgh and out of Dr. Falor's care in July of 1999.  Dkt. [24] at 7.

In light of the foregoing, this Court concludes that no reasonable jury could find that the

evidence of record, viewed most favorably to Plaintiff as the non-moving party, concerning Dr.

Falor's behavior manifested deliberate indifference to Plaintiff's medical needs.   Dr. Falor's

behavior evinces repeated attempts to treat Plaintiff with various drugs, and when these failed, to

seek a dermatology consult, to then seek to comply with the specialist's recommendation by

repeatedly requesting approval for the non-formulary drug Accutane and in the face of the

denials, Dr. Falor made efforts to try alternative treatments that were approved and which

eventually resulted in the successful treatment of Plaintiff's acne with Retin-A cream, or at least

Dr. Falor deemed the Retin A treatment to be successful in the exercise of his medical

judgment.[11]  Such behavior simply fails to manifest the requisite subjective mindset, required to

---

[11]   Even if Dr. Falor's conclusion that Plaintiff's acne was "controlled" was erroneous or negligently
reached, such would not constitute the deliberate indifference necessary for an Eighth Amendment claim.
See, e.g., Ammons v. Altergot, 968 F.2d 1218 (Table), 1992 WL 157551, *3 (7th Cir. July 8, 1992)(Nurse

establish an Eighth Amendment violation.[12]  Hence, Dr. Falor is entitled to summary judgment because no reasonable jury could find him to have the subjective mindset required to establish deliberate indifference.

In the alternative, all of the Moving Defendants should be granted summary judgment based upon their qualified immunity.  An "official is entitled to qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000).  In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Abdullahi v. City of Madison, 423 F.3d 763, 775 (7th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Instantly, this Court concludes that on this record it would not be clear to a reasonable official that it was unlawful to require a prisoner-patient to try the formulary drugs first and have them prove ineffective before approving treatment with non formulary drugs since non-incarcerated citizens, who find themselves in health care plans with formularies, are subjected to these very same requirements at the hands of Moving Defendants' civilian counterparts, i.e., Health Care plan physicians, administrators, and treatment review committees.  See, e.g., Cuco v.

---

"Altergot's belief that Ammons was malingering if honest but erroneous, while crass and unprofessional, would not amount to the deliberate or even reckless infliction of punishment and so would not be actionable under the Constitution.")(some internal quotations omitted); Price v. Cooper, 1996 WL 467242, *3 (N.D.Ill. Aug. 12, 1996)("If medical personnel do not respond to complaints of pain, they are not liable if they honestly believed the inmate was malingering.").  This rule is simply an application of the Estelle principle that more than negligence is needed to make out an Eighth Amendment claim.

[12]  This is true even if Plaintiff had offered to pay for the Accutane himself, given that even if Dr. Falor had issued a prescription for Accutane, due to Plaintiff's incarcerated status, it is not as though he could take the prescription to a pharmacy and get it filled.

Federal Medical Center-Lexington, 2006 WL 1635668, at *36 (E.D.Ky. June 9, 2006)("Cuco

[the prisoner-plaintiff] alleges that during one or more of these examinations, FMC medical staff

told the UKMC physician that FMC would not allow Cuco to be given Lupron, either because it

involved needles as an injectable medication, or because it was not stocked by the formulary.

Either of these justifications, if asserted by the Defendants here, would appear to be a

facially-sufficient penological justification for a prison to require an inmate patient to use a

different, functionally-equivalent treatment methodology.").  Accordingly, the Moving

Defendants are entitled to summary judgment based on qualified immunity.[13]

  For any or all of the foregoing reasons, the Moving Defendants are entitled to summary

judgment.

CONCLUSION

  In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local

Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written

objections to this report.  Any party opposing the objections shall have seven (7) days from the

date of service of the objections to respond thereto.  Failure to timely file objections may

constitute a waiver of any appellate rights.

      Respectfully submitted,

      /s/  _Amy Reynolds Hay_
      United States Magistrate Judge

Dated: 15 August, 2007

---

[13]  While qualified immunity is generally immunity only from money damages,  Morse v. Frederick, __
U.S. __, __, 127 S.Ct. 2618, 2642 (2007), it appears that Plaintiff is no longer a prisoner within the
Pennsylvania Department of Corrections.  See DOC inmate locator website at http://www.cor.state.pa.
us/inmatelocatorweb/.  Hence, any request for injunctive relief would be moot.  Therefore, the only
claims left would be for money damages.

18

cc:    The Honorable Gary L. Lancaster
         United States District Judge

         All Counsel of record via CM-ECF