IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH ROZZELLE,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )    Civil Action No. 98-1738
                                         )    Judge Gary L. Lancaster/
CHARLES ROSSI, Health Care               )    Magistrate Judge Amy Reynolds Hay
Administer; Dr. FALOR; EMSA              )
and/or PRISON HEALTH SERVICES;           )
and RAYMOND RAMSEY                       )
                                         )
            Defendants                   )    Re.  Dkt. No. [162]

## **MEMORANDUM ORDER**

The Magistrate Judge's Report and Recommendation ("Report"), Dkt. [196], filed on

August 15, 2007, recommended that the Defendants' Motion for Summary Judgment, Dkt. [162],

be granted due to Plaintiff's failure to exhaust his administrative remedies.  In addition, the

Report recommended the sua sponte grant of summary judgment to all of the Defendants on the

alternative grounds that (1) requiring a prisoner to try formulary drugs before obtaining non-

formulary drugs did not violate the Eighth Amendment and (2) even if requiring Plaintiff to try

formulary drugs before he could have non-formulary drugs violated the constitution, the

Defendants were entitled to qualified immunity.  In addition, the Report recommended the sua

sponte grant of summary judgment to Dr. Falor on the grounds that no reasonable jury could find

that he possessed the subjective mindset required to prove an Eighth Amendment violation.

Plaintiff poses several objections to the Report, some of which are interrelated.  Dkt.

[200].  Plaintiff objects that the law of the case doctrine prohibits the District Court from sua

sponte granting  summary judgment to the Defendants.  See, e.g., Dkt. [200] at 4 ("The issues

addressed by the Court *sua sponte* had already been addressed by the Third Circuit Court of

Appeals in what is now the law of this case.").[1]  Throughout the objections, Plaintiff refers to
findings of fact which the Court of Appeals allegedly made in its opinion that addressed the
appeal from the District Court's orders of March 22, 2000 and April 3, 2003.  Contrarty to
Plaintiff's argument, this Court's sua sponte grant of summary judgment to the Defendants
would not be inconsistent with the Court of Appeals' October 14, 2004  judgment which
affirmed the District Court's March 22, 2000 order to the extent the March 22, 2000 order
granted summary judgment to Defendants Johnson, Cubberly and Harper.  Nor would this
Court's sua sponte grant of summary judgment to the Defendants be inconsistent with the Court
of Appeals' judgment that vacated the District Court's April 3, 2003 order that sua sponte
dismissed the amended complaint for failure to state a claim pursuant to the PLRA.  To
understand why, we examine closely the District Court orders of March 22, 2000 and April 3,
2003, and the Court of Appeals' holding, as opposed to its dicta, with respect to those orders.
But first, we will review the law of the case doctrine briefly.

As cogently explained by the Court of Appeals for the Federal Circuit,

> The law of the case is a judicially created doctrine, the purposes of which are to
> prevent the relitigation of issues that have been decided and to ensure that trial
> courts follow the decisions of appellate courts.  The doctrine requires a court to

---

[1]  Actually, the doctrine Plaintiff invokes is more accurately called the "mandate rule."  18-134 Moore's
Federal Practice - Civil § 134.23:

> Appellate courts often remand a case to the lower federal courts for further
> proceedings.  It is often stated that the decision of an appellate court on an issue of law
> becomes the law of the case on remand.  This is the almost universal language describing
> the law determined by the mandate.  Although this terminology has been widely adopted,
> the Supreme Court has noted that the mandate rule is not, strictly speaking, a matter of
> law of the case. . . .
>
> The mandate rule has been described as a specific application of the law of the
> case doctrine, but to different ends.

follow the decision on a question made previously during the case.... When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand.... Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.

Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991)(quoting Jamesbury Corp. v.

Litton Indus. Prod., Inc., 839 F.2d 1544, 1550 (Fed.Cir.), cert. denied, 488 U.S. 828(1988)).

However, while the doctrine requires a District Court to follow the mandate of the Court of

Appeals, the District Court is bound to follow only the mandate to the extent that it decided

specific issues; issues not addressed or decided by the Appeals Court do not bind the District

Court on remand.   The rule is that

Law of the case, then, merely requires a trial court to follow the rulings of an appellate court. It does not constrain the trial court with respect to issues not actually considered by an appellate court, Holcomb v. United States, 622 F.2d 937, 940 (7th Cir.1980), and thus has long been held not to require the trial court to adhere to its own previous rulings if they have not been adopted, explicitly or implicitly, by the appellate court's judgment. See Quern v. Jordan, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.... 'While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.' ") (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939))

Exxon, 931 F.2d at 877 (footnote omitted).  Accord  18 Moore's Federal Practice - Civil § 134.23

("Although the district court owes obedience to the mandate of the appellate court, it retains

discretion under the mandate rule to reconsider issues on remand that were not expressly or

implicitly decided by the appellate court.").

Instantly, this court's sua sponte grant of summary judgment to the Defendants, including

Defendants Falor and Rossi, would not be inconsistent with the Court of Appeal's mandate of

October 14, 2004 because the Court of Appeals did not address the District Court's March 22,

3

2000 order that had denied summary judgment as to Defendants Rossi and Falor.  To understand this, we must examine that March 22, 2000 order.

The March 22, 2000 District Court order disposed of the following motions: (1) Dkt. [10], a motion to dismiss/summary judgment filed by Defendants Rossi, Cubberly and Johnson; (2) Dkt. [13] , Plaintiff's motion for summary judgment; and (3) Dkt. [17], a motion to dismiss/summary judgment filed by Defendants Falor and Harper.  The March 22, 2000 order denied summary judgment to Defendant Rossi, Dkt. [24] at 16, granted summary judgment as to Dr. Harper, id. at 18, and denied summary judgment to Dr. Falor. Dkt. [24] at 21.  The March 22, 2000 order also appears[2] to have granted summary judgment to Defendants Johnson, and Cubberly.  Dkt. [24] at 10 ("The undisputed facts show that there can be no liability on the part of defendants Johnson or Cubberly: neither of these individuals had any authority to make treatment decisions concerning Plaintiff's medical care.").  Finally, the March 22, 2000 order denied Plaintiff's motion for summary judgment. Dkt. [24] at 24.  Plaintiff filed an immediate appeal of this order to the Court of Appeals. Dkt. [25].  The appeal was ultimately dismissed upon agreement of the parties by the Court of Appeals . Dkt. [38].

After a substantial period of time with no activity in the case and shortly before the District Court Judge assigned to this case left the bench, he issued the April 3, 2003 order.  The April 3, 2003 order sua sponte dismissed the amended complaint[3] pursuant to the screening

---

[2]  We say "appears to" because it is not clear from the March 22, 2000 order whether it was treating Johnson and Cubberly's motion to dismiss/summary judgment as a motion to dismiss or as a motion for summary judgment.  The order recited both legal standards applicable to motions to dismiss and to motions for summary judgment.  However, the language of the order discussing Johnson and Cubberly appears to be couched in terms of summary judgment.

[3]  Plaintiff had sought leave to amend the complaint, Dkt. [35], which the Court granted in part and denied in part. Dkt. [50].  The Court permitted Plaintiff to amend the complaint by adding claims against two new defendants, namely, Emergency Medical Services Associates/Prison Health Services

4

provisions of the Prison Litigation Reform Act ("PLRA") for failure to state a claim upon which relief could be granted. Dkt. [80]. That amended complaint contained claims against Defendants Rossi, Falor, EMSA and Ramsey. The April 3, 2003 order dismissed all of the claims against all of the remaining four defendants.

Plaintiff filed a notice of appeal. In that notice of appeal, Plaintiff indicated that he "HEREBY APPEALS TO THE THIRD CIRCUIT COURT OF APPEALS THE JUDGMENT AND ORDER ENTERED IN THIS MATTER BY THE HONORABLE ROBERT J. CINDRICH U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA ON APRIL 3, 2003, WHICH DISMISSED PLAINTIFF'S CIVIL RIGHTS COMPLAINT. Dkt. [84].

Notwithstanding the notice of appeal, the Court of Appeals indicated that Plaintiff was appealing both the March 22, 2000 order and the April 3, 2003 order. Dkt. [86], Opinion at 2. This court is not privy to what transpired in the Court of Appeals such that the notice of appeal was deemed to be from both District Court orders.

In its judgment order, the only issue decided by the Court of Appeals with respect to the District Court's March 22, 2000 order was that the grant of summary judgment to Defendants Johnson, Cubberly and Harper was indeed proper and, therefore, was affirmed. This is so because only Plaintiff appealed this order and a party has standing to appeal only if he is aggrieved by the order or if the order is adverse to him. See, e.g., Watson v. City of Newark,746 F.2d 1008, 1011 (3d Cir. 1984) ("One may not appeal an issue upon which one prevailed absent exceptional circumstances.")(quoting, In re First Colonial Corp. of America, 693 F.2d 447, 449-50 n. 5 (5th Cir. 1982)); Queen v. Romine, 156 Fed.Appx. 491, 492 (3d Cir. 2005)("a party has standing to

(EMSA/PHS) and Raymond Ramsey. The motion to amend was denied in all other respects.

appeal only if he is aggrieved by the judgment."). Instantly, the District Court's March 22, 2000 denial of summary judgment to Defendants Rossi and Falor was not adverse to Plaintiff, nor did it aggrieve Plaintiff, hence, he had no standing to appeal that portion of the District Court's March 22, 2000.[4]   Given that only Plaintiff appealed from the March 22, 2000 order, and given that the only thing he could appeal was the grant of summary judgment as to Defendants Johnson, Cubberly and Harper, the only issue before the Court of Appeals was the propriety of the grant of summary judgment to Defendants Johnson, Cubberly and Harper. The denial of summary judgment as to Defendants Rossi and Falor was not presented to the Court of Appeals. It is axiomatic that issues not raised before the Court of Appeals would not be decided by the Court of Appeals, and therefore, the Court of Appeals had no occasion to consider the propriety of the District Court's denial of summary judgment to Defendants Rossi or Falor. Hence, the propriety of the District Court's denial of summary judgment as to Defendants Rossi and Falor was not before the Court of Appeals and, not surprisingly, was not addressed by the Court of Appeals. That this is so is made clear by the Court of Appeals' own opinion wherein the Court of Appeals stated: "[w]ith respect to defendants Johnson, Cubberly and Harper, we agree with the District Court's reasoning in granting summary judgment as to them. We will affirm the District Court's March 22, 2000 Order **on those grounds**." Dkt. [86], Opinion at 7 (emphasis added). Hence, to the extent that the District Court's March 22, 2000 order denied summary judgment to Defendants Rossi and Falor, such action was left untouched by the Court of Appeals

---

[4] While the District Court's denial of summary judgment to Defendants Rossi and Falor was adverse to them, it was not an appealable order because as of March 22, 2000, the order did not end all claims against all parties. New York Football Giants, Inc. v. C.I.R., 349 F.3d 102, 106 (3d Cir. 2003) ("a judgment disposing of less than all claims is not appealable"). Nor could Defendants Rossi and Falor have filed an appeal after the April 3, 2003 order because they had no standing to do so since that order was not adverse to them in any way, because the order dismissed the amended complaint against them for failure to state a claim.

6

and the propriety of the denial undecided by the Court of Appeals. Accordingly, there is nothing in the October 14, 2004 Court of Appeals affirmance of the District Court's March 22, 2000 order that precludes this Court from now entering summary judgment in favor of Defendants Rossi or Falor, much less in favor of EMSA or Ramsey who, at the time of the March 22, 2000 District Court order, were not even parties to the suit. In other words, the Court of Appeals' October 14, 2004 order did not say that the denial of summary judgment as to Defendants Falor and Rossi was correct.

As to that part of the Court of Appeals' order vacating the District Court's April 3, 2003 order sua sponte dismissing the amended complaint for failure to state a claim upon which relief can be granted pursuant to the PLRA, there is absolutely nothing in that disposition which would preclude this court from granting summary judgment to the Defendants based on a finding that there is no genuine issue of material fact with respect to the objective component of the Eighth Amendment claim (as to all defendants) or with respect to the subjective component of the Eighth Amendment claim (as only to Dr. Falor) or with respect to the all of the Defendants' entitlement to summary judgment based on qualified immunity. There is no inconsistency between the holding, as opposed to the dicta, of the Court of Appeals, on the one hand, that the amended complaint cannot be dismissed sua sponte for failure to state a claim because the amended complaint does state a claim upon which relief can be granted and, on the other hand, the Report's recommended sua sponte grant of summary judgment to the Defendants. The two issues presented by the two different procedures (i.e., dismissal of the amended complaint for failure to state a claim upon which can be granted and summary judgment in finding no material factual dispute) involve two different questions and answering one question does not answer the other question. As the Court of Appeals explained in a similar vein,

7

Hazen's claim that summary judgment is foreclosed by the law of the case doctrine is frivolous. Under that doctrine, "once an issue has been decided, parties may not relitigate that issue in the same case." Ogbudimkpa v. Ashcroft, 342 F.3d 207 n. 7 (3d Cir. 2003) (citing Waldorf v. Shuta, 142 F.3d 601, 616 n. 4 (3d Cir. 1998)). The defendants' motion for judgment on the pleadings and their motion for summary judgment obviously raised very different issues and required distinct inquiries. In deciding the motion for judgment on the pleadings, the district court determines from the pleadings "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, when deciding a motion for summary judgment, the district court reviews all discovery and determines whether a genuine issue of material fact exists. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3rd Cir. 2000). The standard used to decide these two very different motions is obviously not the same. In deciding a motion to dismiss on the pleadings, the court presumes that the plaintiff will be able to prove the allegations set forth in the pleadings, and then determines if those allegations establish a cause of action. Summary judgment involves no such presumption.

Hazen v. Modern Food Services, Inc., 113 Fed.Appx. 442, 444 (3d Cir. 2004). Just as in Hazen,

so too here, there is simply no inconsistency between the holding of the Court of Appeals in

vacating the grant of sua sponte dismissal of the amended complaint for failure to state a claim

and this court's sua sponte grant of summary judgment on the Eighth Amendment claims on

grounds other than exhaustion.[5]

---

[5] Plaintiff cites to the Court of Appeals opinion for several propositions, including that the "Third Circuit also found that the medical records submitted by the Defendants made it patently clear that the treatments provided were completely ineffective," Dkt. [200] at 2, ¶ 3, and that "[t]his issue [of whether there was a genuine issue of material fact with respect to the objective prong of the Eighth Amendment, i.e., the report's recommendation that requiring Plaintiff to try formulary drugs before non-formulary drugs could be approved was not an Eighth Amendment violation] has already been addressed and decided by the Third Circuit, most clearly in its finding that there was deliberate indifference . . . ." Dkt. [200] at 5, ¶ 5. These statements that Plaintiff refers to were contained in the portion of the Appeals Court opinion addressing the April 3, 2003 sua sponte grant of dismissal of the amended complaint for failure to state a claim. While it is true that the Court of Appeals referred to the evidentiary record of the case to bolster its holding that the amended complaint did state a claim upon which relief could be granted under any one of three theories of deliberate indifference, such reliance on the record was unnecessary for the Court of Appeals, given that the question before it was whether the amended complaint could state a claim upon any set of facts that were consistent with the amended complaint. See, e.g., Conley v. Gibson, 355 U.S. 41, 47 (1957)(providing the accepted standard for dismissals for failure to state a claim upon which relief could be granted in October 2004, when the Court of Appeals rendered its decision). Because such reliance on the record and statements made by the Court of

8

There is one last issue with respect to the law of the case doctrine. While there is no inconsistency between the Court of Appeals' October 14, 2004 judgment and this court's sua sponte grant of summary judgment on grounds other than exhaustion, there may be some inconsistency between this court's current sua sponte grant of summary judgment at least as to Defendants Falor and Rossi and Judge Cindrich's March 22, 2000 order denying their motions for summary judgment. However, the law of the case doctrine does not bar such inconsistency.

To the extent that the Report's recommended disposition is contrary to Judge Cindrich's March 21, 2000 opinion and order, Dkt. [24], denying various parties' motions, including Dr. Falor's motion to dismiss/summary judgment, Dkt. [17], the court notes that the "law of the case" doctrine is purely prudential and, for the following reasons, the court declines to apply that doctrine. See, e.g., Swietlowich v. Bucks County, 610 F.2d 1157, 1164 (3d Cir. 1979) ("a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result."); Williams v. Runyon, 130 F.3d 568 (3d Cir. 1997).

First, the prior order overlooked evidence of record and would lead to an unjust result. The order reasoned that

---

Appeals, referencing the record were unnecessary to its narrow holding, which was that the amended complaint did state a claim under the Eighth Amendment, those statements were obiter dicta and not binding. See, e.g., U.S. v. Warren, 338 F.3d 258, 265 (3d Cir. 2003)("Gratuitous statements in an opinion that do not implicate the adjudicative facts of the case's specific holding do not have the bite of precedent. They bind neither coordinate nor inferior courts in the judicial hierarchy. They are classic obiter dicta"); U.S. v. Coenen, 135 F.3d 938, 943 (5th Cir. 1998) ("statements which are not necessary to the holding of a case are dicta")(citing, F.D.I.C. v. Enventure V, 77 F.3d 123, 125 (5th Cir. 1996)). Dicta do not establish the law of the case. Planned Parenthood of Cent. and Northern Arizona v. State of Ariz., 789 F.2d 1348, 1353 n.1 (9th Cir. 1986)("dicta are 'not part of the law of the case.'") (quoting, Russell v. Commissioner, 678 F.2d 782, 785 (9th Cir. 1982)).

the record indicates that Dr. Falor was aware in August of 1998 that plaintiff's
acne was not responding favorably to the oral and topical alternatives treatment.
Yet, he persisted with this treatment for almost a year until plaintiff was
transferred to another institution. . . . Instead, the record reflects that he [i.e., Dr.
Falor] continued to treat plaintiff with ineffective alternative medications.

Dkt. [24] at 20.  What this recitation of the "facts" overlooks are the critical facts that shortly

after it was apparent that Plaintiff's treatment with tetracycline and neosporin were ineffective,

Dr. Falor ordered Retin A (after his requests for Accutane were denied), and Plaintiff was treated

with Retin A and successfully so, at least in Dr. Falor's professional opinion as evidenced by the

November 9, 1998, progress note wherein Dr. Falor concludes that Plaintiff's acne was

"controlled."  Cf. Corporacion de Mercadeo Agricola v. Mellon Bank Int'l, 608 F.2d 43, 48 (2d

Cir.1979), wherein the court held that

[O]n a renewed motion for summary judgment before a second judge, the district
court must balance the need for finality against the forcefulness of any new
evidence and the demands of justice.  With respect to a non-appealable denial of
summary judgment, the law of the case is not a limit on the court's jurisdiction,
but a rule of practice which may be departed from in the sound discretion of the
district court.  The first judge always has the power to change a ruling; further
reflection may allow a better informed ruling in accordance with the conscience of
the court.  A fortiori, if the first judge can change his mind after denying summary
judgment, and change his ruling, a second judge should have and does have the
power to do so as well.

Moreover, because Defendants EMSA and Ramsey were not party defendants in March 2000,

Judge Cindrich's order did not, and indeed could not have addressed claims against them.  In

any event, to the extent that the Report's recommended disposition is inconsistent with the

March 22, 2000 order of Judge Cindrich, this Court deems the law of the case doctrine to not

require us to adhere to that decision given that to do so would lead to an unjust result.

Accordingly, Plaintiff's invocation of the law of the case doctrine and/or the mandate rule does

not merit rejection of the Report.

The court will next address some of the remaining objections briefly.

Plaintiff objects that the sua sponte grant of summary judgment based on grounds other than exhaustion denied him notice and an opportunity to be heard. As the Report made clear the Report itself provided notice and objections provided Plaintiff the opportunity to be heard and/or to provide any evidence in support of its position that there is a genuine issue of material fact with respect to the objective prong of the Eighth Amendment as to all of the Defendants, with respect to the subjective prong as to Dr. Falor, and/or with respect to qualified immunity.    The relevance of Plaintiff's request for a status conference, Dkt.[189], to the issue of notice and opportunity to be heard on the Report's recommendation is not apparent. Dkt. [200] at 4.

Next, Plaintiff objects to the Report's analogizing Plaintiff's position to a non prisoner who finds themself in a health insurance program whereby they are required to try formulary drugs before the insurer will pay for non-formulary drugs for the proposition that such treatment which is widely accepted outside the prison, cannot thereby constitute deliberate indifference. This is an accurate statement of the law.  See Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997)("Although the Supreme Court stated in Trop v. Dulles, 356 U.S. 86, 101 (1958), that the Eighth Amendment 'must draw its meaning from evolving standards of decency that mark the progress of a maturing society,' plaintiffs have not demonstrated that a prison's fee-based program violates such standards. On the contrary, fee-for-service programs are very common outside prisons."); Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls."). Moreover, the analogy is apt insofar as if a non-incarcerated individual can expect and is routinely subject to such treatment, then, *a fortiori*, such treatment cannot constitute an Eighth Amendment violation.

11

Next, Plaintiff complains that the Report erred in concluding that Plaintiff could not have included in the original grievance numbered GRN 360-98 any complaint about Accutane. Dkt. [200] at 8, ¶ 8. Plaintiff contends "[a]t page 8 of the Report and Recommendation the Magistrate Judge concludes that Plaintiff could not have included in Grievance 360-98 any complaints about Accutane and its non-prescription or about the failure of any one to comply with Dr. Small's July 21, 1998 recommendation. This is factually incorrect. On the very face of the August 14, 1998 final appeal Plaintiff states he is appealing about the Defendants' refusal to provide him with the medication the dermatologist prescribed. To cling to the number on the top of the page is to honor form over substance. . . ." Id. The Report correctly concluded that, at the time of writing the initial grievance Plaintiff could not have made a claim about Accutane because the date of the initial grievance, June 9, 1998, preceded the date whereon Plaintiff saw Dr. Small, who Plaintiff contends prescribed him Accutane, even though, in fact, Dr. Small did not give him a prescription for Accutane but only recommended trying Accutane if the liver tests confirmed that he could tolerate it. Although the August 21, 1998 "final appeal" letter mentioned Accutane, the relevant DOC policy forbade raising issues on appeal not raised in the initial grievance. This is not honoring form over substance; this is requiring prisoners to comply with the policies in place for exhaustion. Woodford v. Ngo, __ U.S. __, 126 S.Ct. 2378, 2386 (2006)("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural because no system can function effectively without imposing some orderly structure on the course of its proceedings"). This is no more form over substance than the universal rule in courts that issues not raised below may not be raised on appeal.  See, e.g. U.S. v. Diaz-Diaz, 433 F.3d 128, 136 (1st Cir. 2005)("This court has long held that an issue not raised before the trial court cannot be

raised for the first time on appeal.)(internal quotations omitted). Accordingly, this objection is without merit.

 In a related vein, Plaintiff's contention that the question of whether the August 14, 1998 document, Dkt. [174-2] at 3, constituted a final appeal of the Defendants' refusal to provide the needed Accutane presents a question of material fact precluding summary judgment is not well taken. Dkt. [200] at 7. The Report assumed the August 14, 1998 letter constituted a final appeal of Grievance No. 360-98, Dkt. [196] at 7 ("even if Plaintiff's flawed letter of August 14, 1998 can be considered a proper final appal of Grievance 360-98 . . . ."), and still correctly concluded that Plaintiff failed to exhaust the claim because Plaintiff did not comply with the relevant rules promulgated by the Department of Corrections concerning his administrative remedies, which is the yardstick by which we measure Plaintiff's exhaustion. See, e.g., Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004).

 Plaintiff also objects that the Report failed to address the fact that Plaintiff averred in his affidavit, that (1) his grievances were not being processed and (2) that when he was transferred to SCI-Pittsburgh from SCI-Greene, he was told that "no further action could or would be taken concerning grievances filed while he was incarcerated at SCI-Greene once he was transferred to SCI - Pittsburgh." Dkt. [200] at 8 ¶ 10. Plaintiff appears to argue that these "facts" rendered the grievance system unavailable to him. However, in the absence of evidence that grievances he wished to file raising the same claims as he raises in this lawsuit were not being processed or would not be addressed after his transfer, then these "facts" are irrelevancies to the question at hand. That some of Plaintiff's grievances may not have been processed at all or not addressed after his transfer is simply irrelevant unless he can show that any such grievances that he filed raised the claims which he raises herein. Plaintiff has not made such a showing. Indeed, in his

argument in the objections Plaintiff only points to Dkt. [168-17], (which was Exhibit P attached to his affidavit filed in opposition to the summary judgment motion) in support of his argument. Exhibit P is dated January 20, 1999 and complains about Ms. Beerman's (the Grievance Coordinator at SCI-Greene) failure to process grievances generally.  But again, Exhibit P was filed in January 1999, after the two grievances which Plaintiff claims to have exhausted to final appeal (and which he relies upon to establish the fact that he exhausted his claims) were already responded to at the first level, (Dkt. [190-3] at 76 was initial response to Grievance No. 360-98 and Dkt. [190-3] at 40 was initial response to No. 751-98) and were already responded to by Superintendent Johnson at the second level (Dkt. [190-3] at 69 as to No. 360-98 and Dkt [190-3] at 38 as to No. 751-98) and had already allegedly been appealed or should have been appealed to the third level.  Accordingly, that other unspecified grievances concerning what, we do not know, went unresponded to is of no moment. Unless Plaintiff avers and provides evidence that the grievances, which allegedly went unresponded to, raised the very same issues that he raises herein, and tellingly, Plaintiff has not done so,[6] (and moreover it is unsurprising that he has not done so, given his argument that Grievance Nos. 360-98 and 751-98 were the grievances that satisfied his exhaustion requirement) then he fails to show a genuine issue of material fact as to whether the administrative remedy process was available to him for the claims he raises in this lawsuit. See Dkt. [200] at 9 (Plaintiff argues unavailability of administrative remedies).

---

[6] Plaintiff does include a document wherein he complains to Ms. Beerman that he had not yet received from her a grievance number for what would be eventually assigned Grievance No. GRN 360-98. Dkt. [168-3] at 3. However, Ms. Beerman responded by informing him of the number, and Plaintiff thereafter followed all of the channels of appeal as to Grievance No. GRN 360-98. Hence, he has not shown that the administrative remedy was unavailable to him as to GRN 360-98, one of the very grievances he points to as satisfying his exhaustion requirement as to the claims raised herein.

14

In addition, that Plaintiff was allegedly told upon this transfer to SCI-Pittsburgh that no further action would be taken regarding his SCI-Greene grievances, again is of no moment because the two grievances he points to as satisfying his exhaustion requirement allegedly were or should have been appealed to the third level long before his transfer,[7] which occurred in July 1999. Moreover, the "fact" that the final level appeals were not responded to is of no significance given that the question was did Plaintiff present the issues in the final level appeal in accord with the DOC policy. If he had done so then he exhausted his administrative remedies irrespective of whether the final appeal decision maker responded. We find that with respect to Grievance No. 751-98, the affidavit is insufficient because no final appeal document was attached to the affidavit and hence, there is no factual evidence to create a genuine issue of material fact with respect to that grievance and the issue of exhaustion. With respect to Grievance No. 360-98, the Report has already addressed the deficiencies of that grievance. We concur.

To the extent that there are any objections not specifically addressed, they were deemed not to require specific mention as the Report adequately addressed them and accordingly they are found to be without merit.

---

[7] As to Grievance No. 360-98 Plaintiff avers that he filed his final appeal on August 14,1998 nearly 11 months prior to his transfer. As to Grievance No. 751-98, the Superintendent's response to Plaintiff's appeal addressed to the Superintendent was dated December 16, 1998, Dkt. [190-3] at 38. Plaintiff had only seven days thereafter in which to file a final appeal to the Central office, Dkt. 193-2 at 13, ¶ D.1, which is nearly seven months prior to his transfer. Hence, any statements made to Plaintiff in July 1999 that his grievances filed at SCI-Greene would not be processed after his transfer appear to be irrelevant to the question of whether Plaintiff exhausted his administrative remedies as to the claims he raises in the current lawsuit, when the grievances that he points to as having exhausted his administrative remedies with respect to the claims raised herein, i.e., Nos. 360-98 and 751-98, were completed long before July 1999.

15

After de novo review of the pleadings and the documents in the case, together with the

Report and Recommendation, the following order is entered: *Sept*

**AND NOW**, this 28 day of *Oct*, 2007;

**IT IS HEREBY ORDERED** that the motion for summary judgment, Dkt.

[162] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation,

Dkt. [196], filed on August 15, 2007, is adopted as the opinion of the court as supplemented by

this memorandum order.

Gary L. Lancaster
United States District Judge

Dated:

cc:   Honorable Amy Reynolds Hay
      United States Magistrate Judge

      All Counsel of record via CM-ECF

16